MARTHA T. BISHOP *vs.* BELTON A. COPP, EXECUTOR.

Second Judicial District, Norwich, April Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The proper method of securing a review of rulings on evidence is by appeal from the judgment, and not by motion to set aside the verdict and for a new trial, or by motion in arrest of judgment.

The test of cross-examination is the highest and most indispensable

test known to the law for the discovery of truth; and while a cross-examination which has been carried as far as will serve to develop the issues involved and aid the search for truth may be limited by the court, yet it requires the exercise of the court's wisest discretion and highest judgment not to restrict such examination unduly. Where—as in the present case—the issues are those of testamentary capacity and undue influence in a will contest, the evidence must necessarily take a wide range, covering the whole history, mental and physical, of testatrix, and hence on both direct and cross-examination considerable latitude must be permitted.

The defendant executor, who had testified that he had been conservator of the testatrix, and drew her will on the day of its date, and who was the magistrate administering the oath to the witnesses of the will, was asked upon cross-examination what the testatrix said concerning certain of the bequests in the will, where he got the description of the residuary legatee, if he remembered how he got the will, and whether he made any comments at the time. The court sustained objections to all these questions. *Held* that these inquiries were relevant cross-examination upon the matter of the instructions given him for the drafting of the will.

It was error to exclude a question asked of this witness upon cross-examination as to when he was made conservator, since proof by the public record was not the exclusive method of making this proof, and no one ought to know better than the holder of a public office when he was appointed; but it was not error to exclude a question as to whether he, while conservator, paid his ward's bills, since the door had been opened only to what occurred at the time of making the will and not to the range of relations between the witness and the testatrix.

The appellant, sister of the testatrix, testified to the way in which the testatrix and her mother lived, and that it had been necessary to commit the testatrix to a hospital for the insane because of her violence, and that after her release therefrom she lacked the elements of testamentary capacity, but the court refused to permit the witness to state why she did not move to recommit the testatrix to the hospital. *Held* that the court erred, since it was but fair to the appellant to permit her to show, if she could, that there was no necessary inconsistency between her testimony and her acts.

Evidence as to the relations of the testatrix with her uncle by marriage, who was on such terms with her that he supplied her with intoxicating liquor, was relevant on the issue of testamentary capacity.

An alienest testifying for the appellant, after defining and describing the disease insanity, was asked whether there was any characteristic known to alienists affecting the question of attitude of the insane toward their relatives. The court excluded the question on the

ground that it was irrelevant until the particular form of insanity from which the testatrix suffered was shown. *Held* that the court erred in excluding this question, since it was not a necessary prerequisite that the expert should classify the form of insanity, and, moreover, it was for the expert to say whether such characteristic could exist in all forms of insanity, and the court should suspend its judgment as to the sufficiency and credibility of the answer until the time for judgment was reached.

The trial court may exclude evidence which is too remote; and, generally speaking, the question of remoteness must depend upon all the considerations, including time, the character of the evidence, and all surrounding circumstances which in the opinion of the court ought to have a bearing upon its worthiness to be brought into the consideration and determination of the matter in contention.

Conversations, acts, and conduct of the testatrix subsequent to but reasonably near to the time of the execution of the will, are necessarily relevant and material, but as they get further and further from this time they become less and less important, and, as a rule, they are not of the same relative assistance in helping solve the issue of testamentary capacity as are similar conversations, acts, and conduct prior to the execution of the will.

The exclusion of evidence as to a business conversation between the testatrix and one E about twelve years after the execution of the will, *held* not shown to be an abuse of the court's discretion.

The appellant upon cross-examination was asked several questions as to what property her mother had left her by will, the appellee claiming that the testatrix did not feel kindly toward the appellant because, among other things, she felt and stated that the appellant and her husband had caused her mother to transfer to the appellant all the estate which her father had left to her mother, thus depriving her, the testatrix, of her rightful share in her mother's estate. *Held* that the admission of the questions violated the best evidence rule, since the probate records were the best evidence of the fact sought to be elicited by the questions; but that the appellant might properly be asked as a part of her relations with the testatrix what the latter claimed as to such property.

Argued April 26th—decided August 4th, 1921.

APPEAL from an order and decree of the Court of Probate for the district of Groton approving and admitting to probate a certain instrument in writing as the last will of Mary Ellen Benham of Groton, deceased, taken to the Superior Court in New London County and tried to the jury before *Wolfe, J.;* verdict

and judgment in favor of the defendant, sustaining the will, from which the plaintiff appealed. *Error and new trial ordered.*

*Hadlai A. Hull* and *Charles Hadlai Hull,* for the appellant (plaintiff).

*Warren B. Burrows* and *Frank S. Bergin,* for the appellee (defendant).

WHEELER, C. J. The appeal from the judgment of the Court of Probate admitting to probate a certain instrument as the last will of Ellen Benham, raised three questions: (1) Whether the instrument was executed by Ellen Benham as required by law; (2) whether at the time of execution of this instrument she had the testamentary capacity to make a will; (3) whether the will was procured by the fraud, duress and undue influence of the beneficiaries and of B. A. Copp, the executor.

The appellant, in entire disregard of our settled practice, filed a "motion to set aside the verdict and grant a new trial," and also a "motion in arrest of judgment and to grant a new trial," both based upon claimed erroneous rulings on evidence. She also filed an appeal for errors in these rulings. That method of review of rulings on evidence is the only one known to our procedure. The rulings complained of are for the exclusion of questions asked upon cross-examination and direct examination.

We fully approve of the trial court restricting the examination of witnesses to evidence which is competent, material and relevant; and when the examination has been carried as far as will serve to develop the issues involved and aid the search for the truth, we approve of the trial court curtailing the length and

the limit of examinations. To do this so as not to unduly restrict the examination and at the same time not permit it to be stretched to unseemly limits, requires the exercise of the wisest discretion and the highest judgment of the trial court. As we read this record, we are impressed with the feeling that the trial court has exercised its discretion in excluding the direct and cross-examination of appellant's witnesses, to such an extent as to have unduly restricted her in the presentation of her evidence.

The test of cross-examination is the highest and most indispensable test known to the law for the discovery of truth. Professor Wigmore summarizes our own conviction and experience, when he says: "For two centuries past, the policy of the Anglo-American system of evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience." 2 Wigmore on Evidence, § 1367.

The issues of testamentary capacity and that of undue influence necessarily cover a wide range. And both direct and cross-examination upon these issues, to be effective, must be permitted considerable latitude. Upon the issue of testamentary capacity Schouler says: "The whole personal history of the testator, mental and physical, may be freely ranged over upon the issue of his insanity." 1 Schouler on Wills, Exrs. & Admrs. (5th Ed.) § 192.

"When the question is one of sanity or testamentary capacity at a given time, upon the presumption that

the mind does not ordinarily pass suddenly and sharply from sanity or capacity into the opposite condition, nor from the latter into sanity or capacity, but gradually and imperceptibly as day into night, the law permits the evidence to cover long spaces of time in either direction. Of course it weakens as time lengthens and in either direction at last ceases to be of any force." *Dale's Appeal,* 57 Conn. 127, 143, 17 Atl. 757.

The appellee, in the introductory part of his case, was able to produce but a single witness to the will, the other two witnesses having died some years previously. Thereupon, at the suggestion of the court, he produced the defendant executor, the magistrate who administered the oath to the witnesses at the time of the execution of the will, and he testified that he had been the conservator of Ellen Benham, the testatrix, and drew her will on the day of its date, and then he stated that the testatrix signed the instrument, and the witnesses also, and in her presence. He was then inquired of: "Q. Do you recollect what Miss Benham said about the bequest, of Miss Hassam" (referring to a bequest in Ellen Benham's will)? This was objected to and excluded by the court as not proper cross-examination. No exception was taken to this ruling. He was then inquired of: "Q. Did she make any statement to you with reference to the bequest of Dr. Fisher?" The court sustained the objection to this question. The cross-examination continued: "Q. Where did you get the description of the organization or person to whom the bequest or residuum was given?" The court sustained the objection to this question: "Q. You say you drew the will? A. I did. Q. What do you mean by that? A. Why, when Miss Benham told me how she wished her will drawn, and I wrote it . . . . Q. With relation to the execution of the will, when did you get

it; how long before? A. I could not say . . . Q. Do you remember how you got it?" The court sustained the objection.

It is obvious that the court excluded these inquiries because it deemed them not to be proper cross-examination. The trial court failed to give due consideration to the fact that the witness testified on the direct examination that he drew the will. It was relevant cross-examination to test his statement by inquiring as to the instructions given him as to drawing the will. The witness was thereafter inquired of on cross-examination: "Q. You recollect whether you made any comment at the time?" This question was objected to and excluded. All that occurred between the testatrix and the witness who drew the will was admissible cross-examination, made so by the witness having testified that he drew the will in accordance with the wishes of Miss Benham as expressed to him. The same witness had testified on his direct examination that he was the conservator of Ellen Benham at the time he drew her will. He was inquired of on cross-examination: "Q. When were you made conservator?" This question was objected to and excluded. No one ought to know better than the holder of a public office when he was appointed. It is true this could be proven by the public record, but that was not the exclusive method of making this proof. The witness was thereafter inquired of on cross-examination: "Q. While you were conservator over her did you pay her bills?" The court sustained the objection to this question, and appellant excepted. The ruling was correct. It was not cross-examination. The appellee opened the door to inquiry of what occurred at the making of the will, but not as to the range of relations between the witness and the testatrix.

Four rulings excluding testimony in chief offered

by appellant were, we think, erroneous. Martha T. Bishop, the appellant, was the sister of the testatrix. She testified in her own behalf as to the way in which Ellen and her mother lived, and that it had been necessary, in 1895, to commit the testatrix to the Hospital for the Insane at Middletown, because of her violence and of the inability of the household to restrain her. She was then inquired of in chief: "Q. You have described the way your mother and Ellen were living in the homestead. You have described how they were aided by different people. Why did you not move to recommit Ellen to the hospital?" Upon objection the court excluded this question. The testatrix had been released from the hospital, and the appellant's claim before the court and in her testimony was that she lacked testamentary capacity after her release. The testimony of the witness was bound to be weighed in connection with this most natural inquiry, and it was fair to the appellant to permit her to show, if she could, that there was no necessary inconsistency between her words and her acts.

The question asked the appellant on her direct examination: "Did she [Ellen] at any time talk in your hearing about her relations with Mr. Perkins?" was on objection excluded. The ruling was erroneous. It had already appeared in evidence that Mr. Perkins was her uncle by marriage, and was on such terms with her that he supplied her with intoxicating liquor. The issue of testamentary capacity made relevant all the relations of the testatrix with any person, unless too remote, and this evidence was not excluded for remoteness.

The appellant called Dr. Wilcox as a witness, who, after defining and describing the disease insanity, was inquired of on his direct examination: "Q. Will you

state whether or not there is any characteristic known to alienists affecting the question of attitude of the insane toward their relatives." Upon objection the court excluded this question, upon the ground that until the appellant had shown the particular form of insanity from which it was claimed the testatrix suffered, the evidence was irrelevant, since the doctor could not say that antipathy to relatives is necessarily a form of insanity. A legitimate criticism of this ruling would be in the assumption by the judge of the function of the jury, as well as of the expert. It was not a necessary prerequisite that the expert should classify the form of insanity. Nor could the court say that the characteristic referred to in the question could not exist in all forms of insanity. That was for the expert to say. The court may, as it hears the inquiry, be certain that however the expert may answer, if this be all the evidence, it will not influence its judgment. But if the inquiry be a relevant and a material one, as this was, it should suspend its judgment as to the sufficiency and credibility of the answer, until the time for judgment is reached, when it must determine the facts, make the necessary inferences, and draw the conclusions from these and render its decision.

The appellant produced as a witness one Edgecombe and inquired of him on direct examination: "Q. I think you testified you saw Miss Ellen Benham in the store sometime in 1912, was it? A. About that time, yes sir, 1912 or 1913. Q. Did you have a talk with her on that occasion? A. In a business way. Q. What was the talk?" This was objected to as too remote, and excluded for this reason. It was plainly relevant, and also material upon the issue of testamentary capacity, unless indeed too remote. The court clearly has the power to exclude evidence which is too remote. *Hamilton* v. *Smith,* 72 Conn. 374, 381, 50 Atl.

884.    We test the question of remoteness by this rule: "Generally speaking, the question of remoteness, as justifying the exclusion of evidence, must depend upon all the considerations, including time, the character of the evidence, and all the surrounding circumstances which in the opinion of the court ought to have a bearing upon its worthiness to be brought into the consideration and determination of the matter in contention." *State* v. *Kelly,* 77 Conn. 266, 269, 58 Atl. 705.    The will was executed May 1st, 1900, the offer was to prove a conversation twelve years after the execution of the will.    Nothing appears in the record to indicate from the nature of the evidence or from the surrounding circumstances that this converstion had especial relation to this issue.    Conversations, acts and conduct of the testatrix subsequent to but reasonably near to the time of the execution of the will, are necessarily relevant and material, but as they get further and further from this time they become less and less important, and as a rule they are not of the same relative assistance in helping solve this issue as are similar conversations, acts and conduct prior to the execution of the will.    So far as this record discloses, the court did not abuse its discretion in excluding the evidence of a conversation twelve years after the execution of the will.    The ruling upon such a question cannot be determined solely by the element of time; the circumstances and the nature of the evidence in another case might make the twelve-year old conversation admissible.    Each case must be left to the sound discretion of the trial judge, and he must determine in the light of the rule laid down in *Dale's Appeal,* 57 Conn. 143, 17 Atl. 757.

The appellee, upon the cross-examination of the appellant, asked her several questions as to what property her mother had left her by will.    One of the

facts found by the court is that the testatrix did not feel kindly toward her sister, the appellant, for different reasons, but more particularly because she felt and stated that the appellant and her husband had caused her mother to transfer to the appellant all of the estate which her father had left to her mother, and thus deprived her, the testatrix, of her rightful share in her mother's estate. These questions were objected to, among other reasons, as not the best evidence, and admitted against appellant's objection. The probate records upon the mother's estate were the best evidence of the fact sought to be elicited by these questions. So far as the record discloses, there was no other evidence offered of this fact than the answer to these questions. We think the objection well taken; the ruling violated our best evidence rule. The question of what Ellen claimed as to the appellant's having gotten money that belonged to her, which came from her mother's and father's estates, was of a different character. The purpose was to elicit from the appellant a fact in her intercourse with the testatrix, and the appellant had made this proper cross-examination by presenting in her testimony a part of her relations with the testatrix.

Taken separately, some of these rulings of which the appellant complains would not have been of sufficient consequence to secure a new trial, but, taken together, they become of importance.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.