******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., with whom D'AURIA, J., joins, concurring. I agree without reservation in all respects with the well reasoned majority opinion, except for part I A, as to which I concur in the judgment only. With respect to part I A, I am constrained to agree with the majority that the hearsay statement of the defendant's accomplice properly was admitted into evidence as a statement against penal interest under § 8-6 (4) of the Connecticut Code of Evidence,[1] pursuant to *State* v. *Rivera*, 268 Conn. 351, 844 A.2d 191 (2004). We held in *Rivera* that, as a result of the felony murder rule, an accomplice's dual inculpatory hearsay statements[2] that minimize the declarant's participation in the death of a victim nonetheless are "fully and equally" inculpatory and, thus, are admissible as statements against penal interest because the minimization is "limited to one type of murder versus another type of murder." (Internal quotation marks omitted.) Id., 368. The defendant, James Graham, has not asked us to overrule *Rivera*, and, therefore, we are bound to apply its holding to the facts of the present case. I write separately to explain why, in my view, we may wish to reconsider this portion of our holding in *Rivera* in a future case.

The majority opinion accurately sets forth the relevant facts pertaining to the out-of-court statement of the defendant's accomplice, Robert Moye. Approximately one week after the murder of the victim, Leandre Benton, Moye allegedly confessed his involvement in the underlying criminal activity to his friend, Steven Capers. Moye explained to Capers that he was walking along a biking and walking trail in Hamden with the defendant and Brennan Coleman when the three men decided to rob the victim. According to Moye, the victim punched Coleman in the face, and the defendant shot the victim with a .38 caliber pistol. Moye was unavailable to testify at trial, and the trial court admitted Capers' testimony regarding Moye's out-of-court statement under the statement against penal interest exception to the hearsay rule. See Conn. Code Evid. § 8-6 (4).

The issue on appeal is whether Moye's out-of-court statement properly was admitted under § 8-6 (4) of the Connecticut Code of Evidence, even though a portion of Moye's statement blamed the defendant for the murder of the victim. It is clear that Moye's statement is hearsay because it is an out-of-court statement admitted for the truth of the matter asserted. It is also clear that a portion of Moye's statement was against his penal interest because it implicated him in the commission or attempted commission of a robbery. The more difficult question is whether Moye's statement identifying the defendant as the individual who shot and killed the victim also was a statement against Moye's own penal

interest. The majority concludes that it was because Moye "admitted his participation in a robbery that gave rise to a homicide and exposed himself to the possibility of a charge of felony murder. See General Statutes § 53a-54c." Part I A of the majority opinion. To arrive at this conclusion, the majority relies principally on this court's decision in *Rivera*.

The majority accurately describes the holding in *Rivera* and its significance in relation to the present case. In *Rivera*, the out-of-court declarant, Michael Glanville, allegedly confessed to his nephew that he was involved in the crimes with which the defendant, Anthony Rivera, had been charged—felony murder, burglary, arson, and tampering with evidence. See *State* v. *Rivera*, supra, 268 Conn. 352–54, 357. According to Glanville, he and Rivera broke into the victim's home in search of jewelry, and "Glanville . . . remained in the kitchen as a lookout as [Rivera] went through the house." Id., 359. When the victim found Glanville in the kitchen, Glanville "covered his face" and "ran out of the house," while Rivera "chok[ed] the victim" and "picked up [an oil] lamp . . . ." Id. On appeal, Rivera claimed that Glanville's out-of-court statement improperly was admitted into evidence as a statement against penal interest because "Glanville's statement . . . attempts to shift the blame from Glanville to [Rivera] and to minimize Glanville's own criminal involvement in the events." *State* v. *Rivera*, Conn. Supreme Court Briefs & Appendices, November Term, 2003, Defendant's Brief p. 23. To support his claim, Rivera relied in part on *Williamson* v. *United States*, 512 U.S. 594, 114 S. Ct. 2431, 129 L. Ed. 2d 476 (1994), in which the United States Supreme Court held that the federal analogue to § 8-6 (4) of the Connecticut Code of Evidence, namely, rule 804 (b) (3) of the Federal Rules of Evidence,[3] "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. . . . [Courts] may not just assume for purposes of [r]ule 804 (b) (3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." Id., 600–601.

We rejected Rivera's claim, holding that Glanville's "statement was squarely against [his] penal interest. Glanville admitted his participation in a burglary that had given rise to a homicide . . . and thus exposed himself to the possibility of a charge of felony murder. . . . [E]ven if Glanville's statement had attempted to minimize his participation in the homicide, the minimization would have been limited to one type of murder versus another type of murder. The statement further implicated Glanville as a principal in the crime of burglary, and an accomplice in the crimes of arson and tampering with evidence. Therefore, Glanville's statement exposed him to potential liability for the same

types of crimes with which [Rivera had] been charged and, accordingly, the statement fully and equally implicated both Glanville and [Rivera]." (Footnote omitted; internal quotation marks omitted.) *State* v. *Rivera*, supra, 268 Conn. 368. We also rejected Rivera's claim "that the trial court improperly admitted Glanville's entire statement, instead of only the portions [in which] Glanville implicated himself," because, "under our evidentiary law, '[when] the disserving parts of a statement are intertwined with self-serving parts, it is more prudential to admit the entire statement and [to] let the trier of fact assess its evidentiary quality in the complete context.' *State* v. *Bryant*, 202 Conn. 676, 696–97, 523 A.2d 451 (1987). But see *Williamson* v. *United States*, [supra, 512 U.S. 600–601] . . . ." *State* v. *Rivera*, supra, 371 n.18.[4]

The defendant's main brief does not acknowledge our holding in *Rivera* or its precedential effect. In his reply brief, the defendant makes a perfunctory effort to distinguish *Rivera* on the ground that, unlike Glanville's statement in *Rivera*, Moye's statement "did not fully and equally implicate [Moye] in all of the crimes and, thus, [was] not permissible." I agree with the majority that the present case is indistinguishable from *Rivera* because "Moye's statement was indeed inculpatory, as it exposed him to potential criminal liability for the same types of crimes with which the defendant was charged." Part I A of the majority opinion. Again, the defendant has not asked us to overrule *Rivera* or its conclusion that the felony murder rule renders an accomplice's out-of-court admission to a predicate felony enumerated in § 53a-54c "wholly inculpatory" for purposes of § 8-6 (4) of the Connecticut Code of Evidence, even if the accomplice's out-of-court statement accuses the defendant of being entirely responsible for the death of the victim.

Whatever one thinks of the ultimate conclusion in *Rivera*, our analysis in that case did not involve a robust or satisfactory evaluation of the admissibility of dual inculpatory statements that shift the blame to a defendant for the death of a victim in the context of the felony murder rule. The felony murder rule "is one of the most persistently and widely criticized features of American criminal law"; G. Binder, "The Origins of American Felony Murder Rules," 57 Stan. L. Rev. 59, 60 (2004); and its purpose is "to punish those whose conduct brought about an unintended death in the commission or attempted commission of a felony." (Internal quotation marks omitted.) *State* v. *Kyles*, 221 Conn. 643, 667, 607 A.2d 355 (1992).[5] "The felony murder rule includes accidental, unintended deaths"; id.; and it makes an accomplice to a felony equally as culpable in the commission of a murder as the person who killed the victim, so long as the victim was killed "in the course of and in furtherance of" the underlying felony. General Statutes § 53a-54c; see *State* v. *Montgomery*,

254 Conn. 694, 733, 759 A.2d 995 (2000) ("[f]elony murder occurs when, in the course of and in furtherance of another crime, one of the participants in that crime causes the death of a person who is not a participant in the crime" (internal quotation marks omitted)). Thus, the felony murder rule invokes the counterintuitive principle that the participants to the underlying felony are legally guilty—and *equally* so—for a murder that any one of the participants may commit, even though the actual killer has substantially greater moral culpability. See *People* v. *Patterson*, 49 Cal. 3d 615, 621, 778 P.2d 549, 262 Cal. Rptr. 195 (1989) (felony murder rule "incorporates an artificial concept of strict criminal liability that erodes the relationship between criminal liability and moral culpability" (internal quotation marks omitted)).

In my view, the commonsense belief that the person who killed the victim is more culpable than the person who did not necessitates reconsideration of the legal issue decided without any in-depth analysis in *Rivera*, i.e., whether an accomplice's out-of-court statement identifying a codefendant as the perpetrator of a murder committed during the course of a felony should be treated as an inculpatory statement under § 8-6 (4) of the Connecticut Code of Evidence.

In order to explain my concern, it is necessary to briefly review the statement against penal interest exception to the hearsay rule in § 8-6 (4) of the Connecticut Code of Evidence and its underlying justification. The hearsay rule generally bars the use of out-of-court statements to prove the truth of the matter asserted—in this case, Moye's statement that the defendant shot and killed the victim. See, e.g., *State* v. *Saucier*, 283 Conn. 207, 223, 926 A.2d 633 (2007); Conn. Code Evid. § 8-1 (3). In concise terms, hearsay is inadmissible because the declarant cannot be cross-examined, thus depriving the adverse party of any ability to test the truth of the matter asserted using the greatest engine for the discovery of truth ever invented.[6] Without Moye on the witness stand, the defendant cannot directly challenge the veracity of his accusation.

The hearsay exception for statements against penal interest rests on the premise that such statements generally are trustworthy because people typically do not make statements confessing to criminal conduct unless those statements are true. See, e.g., *State* v. *Bryant*, 202 Conn. 676, 701, 523 A.2d 451 (1987) ("the ultimate question [under the statement against penal interest exception is] whether a reasonable man in [the declarant's] position would not have made the statement[s] unless he believed [them] to be true" (internal quotation mark omitted)). As the United States Supreme Court has explained, the exception "is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to

make self-inculpatory statements unless they believe them to be true." *Williamson* v. *United States*, supra, 512 U.S. 599; see *Lilly* v. *Virginia*, 527 U.S. 116, 126–27, 119 S. Ct. 1887, 144 L. Ed. 2d 117 (1999) ("[t]he exception . . . is founded on the broad assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made" (internal quotation marks omitted)).

It necessarily follows from this premise that the presumption of trustworthiness is warranted only if the declarant makes the statement *knowing* that it is against his penal interest. Although an accidental or unknowing admission of wrongful conduct may or may not be true, it will not contain the assurance of trustworthiness that justifies the hearsay exception against penal interest because the speaker is, by definition, unaware of its self-injurious potential. This point is not debatable as a matter of logic, but it creates a serious difficulty in application because its enforcement would require a showing of the declarant's subjective state of mind—actual knowledge that the admitted conduct exposes the declarant to penal consequences—before the statement could be deemed against the declarant's penal interest. See *United States* v. *Lozado*, 776 F.3d 1119, 1125 (10th Cir. 2015) (recognizing that, "[w]ithout awareness that the statement could have adverse consequences, the statement lacks circumstantial guarantees of trustworthiness").

As legal scholars have observed, an inquiry into the declarant's subjective state of mind is problematic in this context due to the "[d]ifficulties of proof, probabilities, and the unavailability of the declarant . . . ." 2 R. Mosteller, McCormick on Evidence (8th Ed. 2020) § 319, p. 577; see J. Cronan, "Do Statements Against Interest Exist? A Critique of the Reliability of Federal Rule of Evidence 804 (b) (3) and a Proposed Reformulation," 33 Seton Hall L. Rev. 1, 13 (2002) (recognizing that, "[b]ecause of the declarant's unavailability, conclusive proof of actual awareness is often impossible"). Section 8-6 (4) of the Connecticut Code of Evidence, like its federal counterpart, avoids this problem, at least in part, by establishing an *objective* standard to determine whether a statement is against a declarant's penal interest. Thus, under our rule (and the cognate federal rule), the question is whether "*a reasonable person in the declarant's position*" would understand the statement "to subject the declarant to criminal liability . . . ." (Emphasis added.) Conn. Code Evid. § 8-6 (4); accord Fed. R. Evid. 804 (b) (3) (A).

And so we arrive at the difficult question that this court answered, without examination or explanation, in *Rivera*: would a reasonable person who confesses to his participation in a robbery, but who states that an accomplice shot and killed the target of the robbery, have understood that he was exposing himself to crimi-

nal liability for the crime of felony murder? As applied to the present case, the precise question is whether Moye's statement about the defendant's shooting the victim during the course of a robbery or attempted robbery objectively would have been perceived by Moye at the time the statement was made as a statement against Moye's own penal interest. If the answer is yes, then the statement is inculpatory and admissible under § 8-6 (4) of the Connecticut Code of Evidence, provided it otherwise was sufficiently trustworthy. See, e.g., *State* v. *Patel*, 342 Conn. 445, 477, 270 A.3d 627 (2022) ("[a]dmission of a hearsay statement pursuant to § 8-6 (4) of the Connecticut Code of Evidence is subject to a binary inquiry: (1) whether [the] statement . . . was against [the declarant's] penal interest and, if so, (2) whether the statement was sufficiently trustworthy" (internal quotation marks omitted)), petition for cert. filed (U.S. August 18, 2022) (No. 22-155). If the answer is no, however, the statement is exculpatory and "presumptively unreliable" because it was "offered to prove the guilt of an accomplice of the declarant." Id., 481; see id. (recognizing that statements in which accomplice attempts to "[shift] blame from himself to the defendant" or "curry favor with the government" historically have been viewed as "presumptively unreliable" and inadmissible under statement against penal interest exception to hearsay rule).

In *Rivera*, we assumed that the answer to the aforementioned question was "yes" and that the statement was wholly inculpatory because, by operation of the felony murder rule, a dual inculpatory statement regarding the commission of a predicate felony during the course of which an individual is killed necessarily implicates both the accomplice/declarant and the perpetrator/defendant "fully and equally" in the crime of felony murder. *State* v. *Rivera*, supra, 268 Conn. 368. Our conclusion in *Rivera* may be correct, but I have serious doubts, and, in my view, the holding warrants careful reconsideration because *Rivera* itself contains no analysis. It is hardly obvious that a reasonable nonlawyer who points the finger for a murder at an accomplice to a robbery is aware of the "illogical"[7] workings of the felony murder rule such that the statement qualifies as one against the declarant's own penal interest. As one court has observed, whether a declarant in such circumstances would have "understood that his statement was a confession to murder is not clear." *Smith* v. *State*, 746 So. 2d 1162, 1168 (Fla. App. 1999), review denied, 767 So. 2d 461 (Fla. 2000). When a declarant admits that he was guilty of a predicate felony but appears to try "to absolve himself of criminal responsibility for [a] murder," the confession to the predicate felony operates as "a confession to the murder" as a matter of law, but it is not apparent that the declarant "would . . . have known that unless he understood the operation of the felony murder rule at the time [the confession

was made]." Id. The declarant "may have been unaware of the felony murder rule. If so, he would not be the first defendant who unwittingly confessed to murder thinking that he was admitting [to] only a less serious offense." Id. If "[t]he record does not disclose any fact or circumstance to suggest that [the declarant] understood the potential harm he caused to himself by making the statement," a court "cannot say with any confidence that a reasonable person in his position would have thought that the statement was true." Id. Under such circumstances, the out-of-court statement is inadmissible as a declaration against penal interest because it does not "[tend] to subject the declarant to criminal liability [such] that a reasonable person in the same position would not have made the statement unless he or she believed it to be true . . . ."[8] Id., 1167; see Conn. Code Evid. § 8-6 (4).

If some of a declarant's out-of-court statements are inculpatory and admissible as declarations against penal interest, but other out-of-court statements are exculpatory and inadmissible, this court would need to address the issue that the majority leaves unresolved, namely, whether to adopt the approach to dual inculpatory statements of accomplices articulated by the United States Supreme Court in *Williamson* v. *United States*, supra, 512 U.S. 599–601. In that case, the court construed the federal counterpart to § 8-6 (4) of the Connecticut Code of Evidence to prohibit the admission of "collateral statements" that are not "self-inculpatory . . . ." Id., 600. The court explained that the animating principle of the exception to the hearsay rule—that people do not confess to crimes that they did not commit—does not extend to collateral, exculpatory statements: "The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature." Id., 599–600. The court observed that "[s]elf-exculpatory statements are exactly the ones [that] people are most likely to make even when they are false; and mere proximity to other, self-inculpatory statements does not increase the plausibility of the self-exculpatory statements." Id., 600. Accordingly, the federal rule "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." Id., 600–601. My research reveals that many states interpret their own analogous statement against penal interest hearsay exceptions in a similar manner. See, *Smith* v. *State*, 647 A.2d 1083, 1088 (Del. 1994) ("As the [United States Supreme] Court in *Williamson* held, there is no theoretical basis for the admission of neutral, collateral statements. . . . Non-self-incriminatory components of a declaration purportedly falling within [rule] 804 (b) (3) [of the Delaware Rules of Evidence]

are presumptively inadmissible hearsay because they cannot claim any special guarantees of reliability and trustworthiness." (Citations omitted; footnote omitted.)); *Commonwealth* v. *Brown*, 617 Pa. 107, 176–77, 52 A.3d 1139 (2012) (adopting *Williamson* approach and holding that "only the introduction of the portion or portions of an out-of-court statement [that] are self-inculpatory to the declarant" are admissible as statements against penal interest); *State* v. *Holmes*, 342 S.C. 113, 118, 536 S.E. 2d 671 (2000) ("non-self-inculpatory statements made collateral to a self-inculpatory statement are inadmissible" as statements against penal interest), cert. denied, 532 U.S. 906, 121 S. Ct. 1230, 149 L. Ed. 2d 139 (2001); *State* v. *Roberts*, 142 Wn. 2d 471, 494–95, 14 P.3d 713 (2000) (adopting *Williamson* approach to admissibility of declarations against penal interest and holding that "[t]he 'whole statement' approach is . . . both overbroad and underbroad").

The defendant in the present case has not raised or briefed these issues. Nor has he asked us to revisit our conclusion in *Rivera* that the dual inculpatory statement of an accomplice that shifts blame to a codefendant is wholly inculpatory under the felony murder rule. In the absence of full briefing and explication of these complex legal questions, I leave their resolution for another day. Accordingly, I concur in the judgment with respect to part I A of the majority opinion.

[1] Section 8-6 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . . (4) A trustworthy statement against penal interest that, at the time of its making, so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In determining the trustworthiness of a statement against penal interest, the court shall consider (A) the time the statement was made and the person to whom the statement was made, (B) the existence of corroborating evidence in the case, and (C) the extent to which the statement was against the declarant's penal interest. . . ."

[2] "A dual inculpatory statement is a statement that inculpates both the declarant and a third party, in this case the defendant." (Internal quotation marks omitted.) *State* v. *Rivera*, supra, 268 Conn. 361 n.12.

[3] Rule 804 (b) of the Federal Rules of Evidence provides in relevant part: "The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

\* \* \*

(3) A statement that:

(A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

(B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability."

As we observed in *State* v. *Schiappa*, 248 Conn. 132, 147, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999), "we [have] expressly adopted the definition of statement against penal interest contained in [rule] 804 (b) (3)."

[4] *Rivera* contains no explicit reference to *Williamson* other than this "But see" citation and provides no analysis whatsoever of the United States Supreme Court's reasoning in *Williamson*. See *State* v. *Rivera*, supra, 268 Conn. 371 n.18.

[5] Critics of the rule include the drafters of the Model Penal Code. See 2

A.L.I., Model Penal Code and Commentaries (1980) § 210.2, commentary, p. 37 (noting that it is difficult to find "[p]rincipled argument in favor of the [felony murder] doctrine"). The criticism is often expressed in extreme and colorful terms. "[I]t is said that the rule is, among other things, '[abhorrent],' 'anachronistic,' 'barbaric,' 'injudicious and unprincipled,' 'parasitic,' and a 'modern monstrosity' that 'erodes the relationship between criminal liability and moral culpability." (Footnotes omitted.) J. Tomkovicz, "The Endurance of the Felony-Murder Rule: A Study of the Forces That Shape Our Criminal Law," 51 Wash. & Lee L. Rev. 1429, 1441 (1994); see N. Roth & S. Sundby, "The Felony-Murder Rule: A Doctrine at Constitutional Crossroads," 70 Cornell L. Rev. 446, 446 (1985) ("[c]riticism of the rule constitutes a lexicon of everything that scholars and jurists can find wrong with a legal doctrine: it has been described as 'astonishing' and 'monstrous,' an unsupportable 'legal fiction,' 'an unsightly wart on the skin of the criminal law,' and as an 'anachronistic remnant' that has 'no logical or practical basis for existence in modern law' " (footnotes omitted)).

To be clear, my point here has nothing to do with whether the felony murder rule is worthy of criticism, and I express no view on the subject. The issue is whether a rule that many commentators consider illogical and unprincipled would nonetheless be known to a reasonable nonlawyer declarant in Moye's circumstances, whose statement identifies an accomplice as the murderer and, therefore, would qualify as a statement against penal interest under § 8-6 (4) of the Connecticut Code of Evidence.

[6] "In *Bishop* v. *Copp*, 96 Conn. 571, 575, 114 A. 682 (1921), Chief Justice [George W.] Wheeler said: 'The test of cross-examination is the highest and most indispensable test known to the law for the discovery of truth.' Wigmore, speaking even more strongly, said that cross-examination 'is beyond any doubt the greatest legal engine ever invented for the discovery of truth.' 5 [J.] Wigmore, Evidence (Chadbourn Rev. 1974) § 1367, p. 32." *State* v. *Dabkowski*, 199 Conn. 193, 202, 506 A.2d 118 (1986).

[7] See footnote 5 of this opinion.

[8] It should be obvious that the familiar maxim that ignorance of the law is no excuse has no application in the present context. The issue is not whether ignorance of the law excuses the declarant's criminal conduct but, rather, whether the declarant's statement should be considered trustworthy because people usually do not knowingly confess to crimes unless they are being truthful. If knowledge of illegality is presumed, then the entire premise of the hearsay exception loses all force.

———————————————