State v. Smith.

———————⟨•••⟩———————

## The State vs. James Smith.

A juror in a criminal case who, though having formed some opinion as to the prisoner's guilt from what he has heard, has yet formed none that it would require evidence to remove or which would prevent him from trying the case without bias, is not disqualified from sitting.

Where a prisoner has failed to exhaust his right of peremptory challenge, it is no ground for granting him a new trial that a challenge for cause was improperly overruled.

It is not a rule to be laid down for the action of a jury, that each juror should be governed by his own independent conclusions, without being influenced by the judgment or opinions of the others.

A party has no right to cross-examine a witness except as to facts and circumstances connected with matters stated in his direct examination, and if he wishes to examine him as to other matters he must do so by making the witness his own and calling him as such at the proper time.

A question put to a witness must not assume a fact which does not exist.

State *v.* Smith.

It is the duty of the judge presiding at a criminal trial to be present during the whole time that the trial is in actual progress, so that he can see and hear all that is done and said.

Where however the judge for a few moments during the argument of a case went into the retiring room immediately behind the bench, but was all the time where he could hear all that was said, and so far as appeared the door was open through which he could see what was done, it was held not to be sufficient ground for granting the prisoner a new trial.

Upon a trial for murder in the first degree, which requires a mental condition that allows premeditation and wilful intent, it was claimed that the prisoner was intoxicated at the time and incapable of those mental acts. Held to be no error not to allow a medical expert, who had made a personal examination of the prisoner and who was called by him, to be asked by the prisoner whether in his opinion he was not easily affected by intoxicating liquors; the question for the jury being wholly as to his actual condition, as to which direct evidence was offered.

It is no error to refuse to charge that in murder in the first degree the jury must find that the act was done while the prisoner was in full possession of his reasoning powers, unimpaired by anything affecting his mental condition. A lower condition of the mental faculties would be sufficient.

It is wholly a question of fact for the jury whether intoxication existed to such a degree as to incapacitate the prisoner for conceiving and executing a wilful, deliberate and premeditated intent to kill.

And held to be no error for the court, having instructed the jury that intoxication might destroy the mental capacity to form a specific intent to kill, to refuse to instruct them that if the prisoner was so intoxicated that his drunken condition was observable, it was a matter of "extreme importance" on the question of his capacity to form such an intent.

It is no error for the court to refuse to charge that threats made by an intoxicated person are entitled to very little consideration in determining the question of his intent. It is wholly a matter for the jury, and the court is not bound to say anything about it.

A judge is never bound to charge upon a supposed state of facts, which has no evidence to support it.

In murder in the first degree, the question of the time that may have passed between the conception of the intent to kill and the execution of the intent, is important only as there must have been time enough for the prisoner to form the wilful, deliberate and premeditated intent to kill. If there was enough for this it is all that is needed; and this is wholly a question for the jury.

It being a question whether the fatal shot was fired from the prisoner's pistol or from one in the hands of the deceased, both of which were before the court as exhibits, it was held to be no error for the judge to refuse to allow an expert to take away the pistols for the purpose of experimenting with them with a view to ascertaining from which the bullet came. It was a matter wholly within the discretion of the court.

The statute (Gen. Statutes, tit. 20, chap 13, sec. 8,) provides that "no person shall be convicted of any crime punishable by death, without the

testimony of at least two witnesses, or that which is equivalent thereto." Held not necessary that each important fact be proved by the testimony of two witnesses or its equivalent. It is enough if the evidence as a whole is equivalent to that of two witnesses.

And held that it was no error for the judge to refuse to instruct the jury that the evidence must be that, or equivalent to that, of two "reliable" witnesses. It was proper for the judge, having called their attention to the statute, to leave them to judge entirely for themselves as to how far they were to accept the testimony, whatever might be the character of the witnesses, and as to what constituted the equivalent of the testimony of two witnesses, whether the evidence was direct or circumstantial, or made up of both.

Declarations as to facts attending a murder, made by the victim in the expectation of death, are admissible upon the trial for the murder.

INDICTMENT for murder in the first degree, in killing Daniel I. Hayes; in the Superior Court for New Haven County; tried to the jury on the plea of not guilty, before *Park, C. J.* Verdict guilty of murder in the first degree and motion by the prisoner for a new trial for errors in the rulings and charge of the court. The case is sufficiently stated in the opinion.

*L. N. Blydenburgh* and *T. J. Fox,* in support of the motion.

*T. E. Doolittle* and *V. Munger,* contra.

CULVER, J.* The accused asks for a new trial on various grounds, which will be considered in their order.

1. Because the court below overruled his challenges for cause, to the two jurors, Pickett and Dibble.

We think the rulings were justified by the cases of *Wilson* v. *The State,* 38 Conn., 126, and *Hoyt* v. *The State,* 47 Conn., 530, and cases there cited. Both jurors stated, as the record shows, that though they had formed some opinion from what they had heard, yet they had formed none that would require evidence to remove, or which would prevent them from trying the case fairly, unbiassed by any opinion.

* Judge CULVER of the Superior Court was called in to sit in the place of PARK, C. J., before whom the case had been tried in the court below.

It also appears that in empaneling the jury, the accused did not exhaust the number of his peremptory challenges by two. He challenged but eighteen peremptorily. Where a prisoner has failed to exhaust his right of peremptory challenge, it is no ground for granting him a new trial that a challenge for cause was overruled. *Hoyt* v. *The State*, supra.

2. Because the court permitted the State to ask one Thomas S. Ellis what he heard said between the deceased and "Father Costello," and what was done. We see no error in this. It appears that this witness was called by the State to prove that the deceased, within a short time before he died, made certain declarations in regard to the cause of the shooting, and the circumstances immediately connected with it, and that when the declarations were made he was conscious that death was impending. The court found that the deceased made the declarations when he was fully conscious that he could live but a few minutes, and the facts contained in the record fully justify such finding.

The law relative to dying declarations is too well settled to require the citation of authorities. If, however, any are needed, they may be found in Wharton's Crim. Ev., sec. 282; 1 Greenl. on Ev., sec. 158; *Murphy* v. *The People*, 37 Ill., 447; *People* v. *Williams*, 3 Parker, 84.

3. The accused next claims that the court erred in excluding the question in relation to what was done after the deceased said to Dr. Blodgett that he wanted to be examined.

We see no just cause for complaint of this ruling. It appears that after the deceased had been shot, and he had taken the accused to the lock-up, and Dr. Blodgett had been called, he said he wanted to go somewhere and be examined; that thereupon he, with Dr. Blodgett and Ellis, went to the house of the latter; that this occurred about seven o'clock in the evening; and that about two hours later Dr. Baldwin was called to attend the deceased and continued his attendance till he died.

For the purpose of proving that Dr. Blodgett probed the wound, the counsel for the accused asked Ellis on his cross-

examination:—"What was done while you, Dr. Blodgett and the deceased and Dr. Baldwin were in the bedroom, after, as you say, Hayes said to Dr. Blodgett that he wanted to go somewhere and be examined, or words to that effect?" The witness had testified in chief that Dr. Baldwin took a pistol from the pocket of the deceased and gave it to him, the witness, in the room. Dr. Blodgett, it appears, was not present, having left sometime previous. The State objected to the question upon the ground that it was irrelevant and improper, as it called for circumstances not alluded to by the State upon the examination of the witness; also because it assumed that Dr. Baldwin was present with Dr. Blodgett, which was not true in fact.

We think the court very properly sustained the objection. The question was manifestly objectionable in that it assumed the presence of Dr. Blodgett. It was also objectionable in attempting to go into the defence before the time. Greenleaf says (Evidence, vol. 1, sec. 445,) that the rule is now considered by the Supreme Court of the United States to be well established, that a party has no right to cross-examine any witness except as to facts and circumstances connected with matters stated in his direct examination, and that if he wishes to examine him as to other matters he must do so by making the witness his own and calling him in the subsequent progress of the trial; and cites *Philadelphia & Trenton R. R. Co.* v. *Stimpson,* 14 Pet., 448, 461, and other cases.

The accused could not have been prejudiced by this ruling, for it appears that he called the witness in a subsequent stage of the cause, and was informed by the court at the time of the ruling that he could do so.

4. The accused next complains of the court for allowing Mrs. Hayes, the wife of the deceased, to state that the prisoner's father came to the house of the deceased in the evening of the day of the homicide, and informed him that the accused had just been committing a breach of the peace, and requested him to go and arrest him, and that the deceased said, as he left the house with the father of the

prisoner, that he was going to arrest "Chip Smith," meaning the prisoner.

We think the evidence was admissible. The deceased was chief of police of the borough of Ansonia, and as such it was his duty to make the arrest, if he believed a breach of the peace had been committed as the father of the prisoner stated, and as he made the arrest without a warrant it was proper for the State to show that he acted in good faith, and upon *speedy information* of some one claiming to have personal knowledge of the facts. What the deceased said when leaving his house, was manifestly admissible as part of the *res gestæ.* The cases of *Douglass* v. *Chapin,* 26 Conn., 42, and *Hunter* v. *The State,* 40 N. Jersey, 538, are directly in point. Indeed it is too clear to require the citation of authorities.

5. The prisoner claims that the court erred in not permitting an expert to examine and make experiments with the pistol to see if he could ascertain from which one the fatal bullet was discharged.

The pistols were exhibits under the direction of the court. It appears that the proposed experiments would change their condition. The expert so stated. The judge may have thought it important that they should go to the jury just as they were. However this may have been, the matter was one that lay wholly within the discretion of the court, and can not be made the subject of error.

6. The next ground of complaint is the ruling of the court in not permitting the prisoner's counsel to inquire of Dr. Jewett if in his opinion the prisoner was not easily affected by intoxicating liquors, the witness being offered as a medical expert and having stated that he had made a personal examination of the prisoner while confined in jail.

We think the ruling was correct. It was not claimed that there was any evidence as to how much liquor the prisoner had drunk; so that the question for the jury to determine was, whether his mind was in such a condition as to be able to form a wilful, deliberate, premeditated and specific intent to kill the deceased, and whether while in

such condition of mind he did so kill the deceased. And the judge charged the jury "that the law was so that if the accused, before the homicide and down to the time of it, had control of his mental faculties enough, and had mental capacity enough, to form a specific intent to kill the deceased, and did so kill him wilfully, deliberately and premeditatedly, and while apprehending the nature and character of the act, he had mind enough and capacity enough to commit murder in the first degree. If he had not such capacity, then he could not commit murder in the first degree. That drunkenness does not excuse a man for anything that he in fact does, but aggravates his crime; but that murder in the first degree requires some activity of mind to commit it. That a party to be able to perform a specific intent to kill another, must have mind sufficient to reason upon and understand the character of the act he is about to commit, for the homicide must be committed deliberately, wilfully and premeditatedly. Hence, in a given case, it is a question to be considered whether a party may not be in such a state of drunkenness that he is not able thus to reason. If he is not able to reason he cannot commit murder in the first degree, for that crime requires the exercise of reason, deliberation and premeditation, and a specific intent to kill. So it is not true that drunkenness excuses crime, but it is true that a man may not be able to commit the crime of murder in the first degree on account of his drunkenness. And if he did not commit murder in the first degree surely he ought not to be punished for it. Murder in the second degree does not require this activity of mind."

Surely the jury could not have failed to see and understand the difference between the degrees of murder. The question as to whether the accused was easily affected by intoxicating liquor or had drunk much or little, was of no consequence. If he was in the condition of mind, when he committed the fatal act, which the jury were told they must find that he was, he was capable of committing murder in the first degree.

7. The next ground upon which the prisoner asks for a new trial, is the temporary absence of the judge during the trial.

The motion states that "while Mr. Munger, assistant attorney for the State, was making the opening argument, the judge withdrew to the judges' ante-room for a few minutes, but was all the time within hearing of the proceedings in court, and during the time Mr. Munger in arguing stated that one witness testified that as he passed the deceased and the prisoner, the deceased requested the prisoner to go with him, and that the latter made no reply. The prisoner's counsel interrupting him, said that he was mistaken, and that the accused did make a reply. The state's attorney stated that the prisoner's counsel was correct, and that the accused did make a reply, and gave the language, which was assented to by the prisoner's counsel, and Mr. Munger accepted the correction, and proceeded with his argument. And thereupon the prisoner's counsel moved to quash the panel, and that the jury be dismissed from further consideration of the case."

We must dispose of this question upon the facts disclosed by the motion. If they do not show that the prisoner is entitled to a new trial we have no power to grant it.

It does not appear that the door was closed during the judge's absence, so that he could not and did not see, as well as hear, every thing pertaining to the trial. For aught that appears to the contrary, the judge may have stepped into the ante-room,—which we know is directly back of the bench,—where the air was purer and fresher, and occupied a position so near the door as to enable him to see and hear as well as if he had remained inside the court-room.

We all agree, and desire to have it distinctly understood, that it is the duty of the presiding judge at criminal trials, and especially where life is involved, to be visibly present every moment of their actual progress, so that he can both see and hear all that is being done. This is a right secured to the accused by the law of the land, of which he cannot be deprived. All the formalities of the trial should be

scrupulously observed, so that the people present may see and know that everything is properly and rightfully done.

8.   The prisoner next complains of the omission of the judge to charge, that to convict of murder in the first degree the jury should be satisfied beyond a reasonable doubt that the homicide was committed by the accused while lying in wait for the purpose of killing the deceased, or that it was done wilfully, premeditatedly and deliberately, while the prisoner was in *full* possession of his reasoning powers, *unimpaired* by anything influencing or controlling his mental condition.

We do not think the prisoner was entitled to a charge in accordance with this request.   In order to justify a conviction of murder in the first degree, it is not necessary to prove that the party charged with the crime was in *full* possession of his reasoning powers.   The judge laid down the law correctly as to what condition of mind the prisoner must have been in at the time he committed the homicide, as already stated.

9.   The prisoner's next ground of complaint is, that the court refused to comply with his request to charge that, "the facts showing that the act was done, and that it was wilful, deliberate and premeditated, must have been testified to by at least two competent and reliable witnesses, or proven by that which is equivalent thereto, and that the jury must be satisfied that the same has been so proved beyond a reasonable doubt, before they can convict of murder in the first degree; that is, the jury must be satisfied beyond a reasonable doubt that the evidence is equal to the testimony of two witnesses."

We think the court properly refused to comply with this request.   The witnesses were of course competent.   They would not have been admitted if they had not been.   There were therefore no facts in the case to which this part of the request could be applicable.   The only question to be considered is, whether the judge should have instructed the jury that the evidence was to be that of two "reliable" witnesses or equivalent thereto.   This term expresses a

quality of character in a witness, and implies that he must be honest and truthful; but no question of law can be made as to such a matter. It is wholly a matter for the jury. The witness may be an accomplice or otherwise disreputable, and yet they may be satisfied that he tells the truth. Still more difficult would it be to lay down any rule as to what evidence is " equivalent to two witnesses." The jury must judge for themselves. It is peculiarly their province. The whole duty of the court is to call the attention of the jury to the statute and instruct them that the case must be proved by the " testimony of at least two witnesses or that which is equivalent thereto," leaving them to judge entirely for themselves what constitutes sufficient evidence, whether it be direct or circumstantial, or made up of both.

The court was also right in instructing the jury that it was not necessary that there should be two witnesses or more to every important fact to justify a conviction of murder in the first degree. The rule on the subject is well settled. If there are two or more witnesses, each testifying to different parts of the same transaction, or to different circumstances concerning the case, tending directly to show the guilt of the party accused, it may be regarded as a sufficient compliance with the statute, although there may not be two witnesses to any one fact or circumstance. 2 Swift Dig., 406.

10. The prisoner asked the court to charge the jury that " in order to find him guilty beyond a reasonable doubt, the jury must find that the acts done can in no way be explained except upon the theory of the guilt of the prisoner; if any juror finds, upon all the facts proven, that there exists a question in his mind, based upon the evidence in the case, whether the prisoner is guilty, and proven so by the testimony of two witnesses or what is equivalent thereto, then there is such reasonable doubt as should prevent a verdict of murder in the first degree."

We think the court charged substantially in accordance with this request by complying with the fourth request, which was that " the proof in order to justify a verdict of

guilty of any offence, whatever the degree, must exclude every reasonable hypothesis of innocence in the mind of each juror."

11. The prisoner next complains of the court for not complying with his request to charge that "each juror in this case must be governed by his own judgment, founded upon the law and the evidence, and must not be governed, controlled or influenced by the judgment or opinions of others in agreeing to a verdict."

We think this is not sound law, and that the court would not have been justified in complying with the request. Although the verdict to which each juror agrees must, of course, be his own conclusion and not a mere acquiescence in the conclusions of his fellows, yet in order to bring twelve minds to a unanimous result, the jurors should examine with candor the questions submitted to them and with due regard and deference to the opinions of each other. In conferring together the jury ought to pay proper respect to each other's opinions, and listen with candor to each other's arguments. If much the larger number of the panel are for a conviction, a dissenting juror should consider whether the doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men equally honest, equally intelligent with himself, who have heard the same evidence, with the same attention, and with equal desire to arrive at the truth, and under the sanction of the same oath. And on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the conclusions of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows. This is substantially what was stated to the jury in *Commonwealth* v. *Tucy*, 8 Cush., 1, and sanctioned by the Supreme Court of Massachusetts.

12. The prisoner next claims that the court erred in not complying with his request to charge the jury that "if they

should find that the accused was evidently in an intoxicated state, so that his drunken condition was observable, then that fact is of exceeding importance as tending to show that the accused was not in a condition to commit a wilful, deliberate and premeditated crime."

The court in other parts of the charge laid down the law correctly and clearly with regard to the difference between murder in the first degree and that in the second degree, and stated that, to warrant a conviction of the former, it must be proved that the prisoner had sufficient control of his mental faculties to form a specific intent to kill; and the court also stated that intoxication might destroy the capacity to form such an intent. When now requested to instruct the jury that, if the prisoner was in such " an intoxicated state that his drunken condition was observable," that fact was " of exceeding importance," as tending to show that he was not in a condition to form an intent to kill, the court was asked to instruct the jury that intoxication (of which there may be various degrees) was a fact of *special importance* as evidence upon the question. But the question of the relative importance of different causes that might operate to impair the prisoner's mental capacity was a question wholly for the jury. The judge did his whole duty in stating that the mental capacity must exist, and that it might be destroyed by intoxication.

13. The prisoner next claims that the court erred in not complying with his request to charge that boasting and threatening remarks by a person in an intoxicated condition are entitled to very little weight or consideration in determining the question of his intent.

This was a question of fact exclusively for the consideration of the jury. Not being a question of law, it was not the duty of the court to say anything about it. The court was not bound to argue the case for the prisoner.

14. The prisoner requested the court to charge that " if the jury should find from the evidence that the deceased, though an officer, acted unwarrantably in making the arrest, and used brutal force before it was necessary to arrest the

accused, and that the accused, with a disordered mind from the effects of liquor, believed that the officer intended to take his life, or do him great bodily harm, and acting under that belief discharged the weapon, he cannot be convicted of murder."

The court modified this by adding:—" and there was reasonable foundation for such belief." In all other respects the judge complied with the request.

It does not appear that there was any evidence to show that the deceased acted *unwarrantably* in making the arrest, or used *brutal force* before it was necessary to arrest the prisoner, nor that the accused ever claimed that he supposed he was acting in self defense, or *believed* the deceased was going to take his life or do him great bodily harm, and so discharged his pistol. A judge is never bound to charge upon a supposed state of facts, which it is not claimed has any evidence for its support.

Under the charge the jury must have found that the prisoner before the homicide, and at the time, had control of his mental faculties so as to form a wilful, deliberate, specific intent to kill the deceased, and that he executed such intent, wilfully, deliberately and premeditatedly, apprehending the nature and character of the act, and that there was no reasonable foundation for the belief on his part that the deceased was going to take his life or do him great bodily harm.

15. The prisoner claims that the judge erred in saying, in the course of his charge, that it was claimed by the prisoner that three chambers only of his pistol were found discharged, that previous to the affray it had been shown by witnesses that he made three discharges of his pistol, and that the cylinder now showed that three discharges only had been made, and that consequently his pistol could not have done the mischief; that the State claimed to have shown that after the pistol was loaded at Thompson's corner, about four o'clock that afternoon, two discharges of it were made; that if these three discharges were made as the prisoner claims, then five discharges were made; that if

State v. Smith.

this was so the prisoner must have re-loaded somewhere. It is claimed that the judge stated a conclusion of fact to the jury, upon a point upon which there were conflicting claims and testimony. But it seems to us that the judge was simply stating the claims of the State and the prisoner, and that if such claims were correct, such must have been the result. We see no objection to this, and cannot see how the prisoner could possibly have been prejudiced by it.

16. It appears that after the judge had charged the jury and they had had the case under consideration, they came into court and said there was a difference of opinion among them, and desired further instruction, and presented to the court the following question in writing:—" Can a man form a determination to kill another at the moment, and by executing that determination immediately, be guilty of murder in the first degree under the law?" Which question the judge answered as follows, and we think correctly:—" The question of time is important only so far forth as this—there must be time enough for the accused to form a wilful, deliberate, premeditated and specific intent to kill the deceased, which must be formed before the execution of such intent. The statute requires the killing to be wilful, deliberate and premeditated, and if there is sufficient time to form the wilful, deliberate, premeditated and specific intent to kill before the act of killing, then the time will be sufficient, whether it was longer or shorter. The act of killing must be preceded by such wilful, deliberate, premeditated and specific intent, and if there is time enough for that, that is all that is necessary. It is a question of fact for the jury, and in determining this the jury must consider all the evidence in the case."

The other questions on the brief of the prisoner's counsel cannot be considered, not being contained in the motion.

A new trial is not advised.

In this opinion the other judges concurred; except PARK, C. J., who having tried the case in the court below, did not sit.