THE STATE OF CONNECTICUT *vs.* FRANK WYMAN.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, Js.

Argued May 1st—decided June 8th, 1934.

*Clifford B. Wilson,* with whom was *Leonard McMahon,* for the appellant (the accused).

*Lorin W. Willis,* Assistant State's Attorney, with whom, on the brief, was *William H. Comley,* State's Attorney, for the appellee (the State).

HAINES, J. This accused was charged under General Statutes § 6277, the relevant portions of which provide: "Any man who shall carnally know any female under the age of forty-five years who is epileptic, imbecile, feeble-minded or a pauper shall be imprisoned," etc. The information alleged that the "State's Attorney for Fairfied County accuses Frank W. Wyman . . . of the crime of carnal abuse of a feeble-minded person, and charges that between the first day of December, 1931, and the first day of Janu-

ary, 1932, . . . said Frank W. Wyman did carnally know one Margaret Casey, a female aged thirty-one years, who was at said time an imbecile. . . ."

The State offered evidence to prove and claimed to have proved that in the month of December, 1931, Margaret Casey was about thirty-one years of age and lived in Newtown in this State; that for nearly six years before that date she had permitted the accused to have carnal knowledge of her body at regular intervals, the last occasion being December 9th, 1931; that about January 10th, 1932, she informed the accused that she was pregnant; that on September 10th, 1932, she gave birth to a child; that on or about June 1st, 1932, the accused was questioned in regard to his relations with Margaret Casey and at first denied that he knew or had ever spoken to her, but later admitted that he was responsible for her pregnancy and agreed to make arrangements for the expenses of childbirth. The accused offered no evidence and now raises no question as to the correctness of this finding.

The defendant assigns error in the refusal of the court to set aside the verdict, and has procured the certification of all the evidence for this record. The stated ground of the motion was that the State had failed to prove beyond a reasonable doubt "that Margaret Casey was feeble-minded or imbecile." No evidence on this point was offered by the defendant, but the State offered Dr. David Ellrich, a qualified and experienced expert in mental cases, who testified he had spent some time in examining the woman at his office, and had applied the Binet-Simon test, which was a recognized method for determining the intelligence of an individual, and as a result of that test, he found her to be "a feeble-minded individual of the imbecile class." He said that "she was imbecilic, that she rated low," and in explanation of his finding he

added: "Every feeble-mindedness includes imbecilic stages, includes the state of imbecility;" that there are many degrees of feeble-mindedness—in some the individual knowing the distinction between right and wrong, and in others, not. This woman was definitely placed "in the class of imbeciles."

The defendant claims that by itself the results of the Binet-Simon test, which was defined by the witness as an intelligence test, are not sufficient to establish feeble-mindedness or imbecility in this case, citing a distinction between an intelligence status and a mental condition discussed by E. A. Doll in an article entitled "The Term Feeble-minded," in the Journal of American Institute Criminal Law and Criminology, Vol. 8, page 216. The defendant is quite justified in emphasizing this distinction if his view of the purpose and intent of the statute is correct: that it is to protect one who has insufficient mental capacity to know the right and wrong of her conduct in sexual matters; one without the mental capacity as distinguished from moral resistance, to overcome the temptation; one whose mind does not rank reasonably well with the average person, or who, by reason of subnormal development, is not adequately protected by those laws which protect the public generally.

The protection of the individual is clearly the main purpose of some of the statutes cited to us from other jurisdictions, and the ability of the particular individual to know the right and to resist the wrong, would conceivably be a vital element of proof in a prosecution under such a statute. Our own legislation, however, has a broader purpose, viz.: the protection of the public and the community against the danger of increasing the number of mental defectives in our population.

Statutory offenses in this State are divided into vari-

ous classes having relation to their general purpose, such as offenses against the sovereignty of the State; against public property; against private property; against public justice; against public peace and safety; against chastity; against humanity and morality, and finally against public policy.

The statute in question is not found among those defining offenses against the person, such as indecent assault (General Statutes, § 6052); nor against chastity, such as abuse of a female under sixteen years of age (General Statutes, § 6240), but it is classed as an offense against public policy. The history of the statute shows the classification to be sound, its moving purpose being to check the increase of mental defectives and abnormal persons in the community which results by inheritance from defective parents. Thus, it is also an offense in this State for "epileptic, imbecile or feeble-minded" persons to marry, if the woman is under the age of forty-five years, assumed to be the limit of the child-bearing period. General Statutes, § 6275. This legislation originated in this State as §§ 1 and 3 of Chapter 325, amended by Chapter 350, of the Public Acts of 1895, in substantially the same language in which it now appears in the Revision of 1930, §§ 6275 and 6277. In the Revision of 1902 it was appropriately included in Chapter 89 as §§ 1354 and 1356, entitled Offenses Against Public Policy, and was so classed in the Revision of 1918, Chapter 334, §§ 6428 and 6430. The description of the prohibited classes and the age limit of forty-five years is the same in both these statutes. *Gould* v. *Gould*, 78 Conn. 242, 243-245, 61 Atl. 604; *Daboll* v. *Moon*, 88 Conn. 387, 391, 392, 91 Atl. 646. In view of the purpose of the statute in question (§ 6277) it is of less importance whether the woman has sufficient mental capacity to know the distinction between right and wrong. She

may be able to draw these distinctions and yet be "epileptic, imbecile [or] feeble-minded" and so within the prohibited class, for either marriage or carnal intercourse. Neither of these statutes makes any distinct-tion between the varying degrees of epilepsy, feeble-mindedness or imbecility. General Statutes, §§ 6275, 6277.

The evidence in this case clearly puts this woman in a prohibited class. The doctor reached that conclusion not only from the Binet-Simon test, but altogether apart from that, by his own observation of the woman. He said he formed his personal opinion, disregarding the Binet test, and his conclusion was that she was feeble-minded and in the imbecilic class. Nor do we look upon her testimony to which reference is made, as necessarily tending to refute this conclusion. The jury thus had before them, not only the results of the Binet test, but the independent opinion of the doctor, and they were in a position to supplement this by their own judgment based upon their observation of the woman and her reaction to her oral examination upon the witness stand. It is incorrect to say that the doctor made no distinction between the terms "feeble-minded" and "imbecilic," but that distinction is unimportant in our view of the statutory purpose. The jury were entitled to give probative value to the doctor's testimony that the woman was both feeble-minded and imbecilic, and they were justified in this conclusion upon that feature of the case.

The record discloses that the jury had deliberated for nearly five hours, and were then recalled to the court room and further instructed, and soon thereafter returned their verdict. In giving the further instruction, the court assured the jury it had no criticism to make of the length of time they had been in conference and that it showed they had earnestly considered

the matter. It was then stated to them that the court felt it was its duty to give them such aid as it properly could, and read to them a portion of the opinion of this court in *State* v. *Smith*, 49 Conn. 376, at page 386. The defendant contends that this charge did not sufficiently inform the juryman of his right and duty to retain his own opinion, and was therefore inadequate and prejudicial to the accused. We cannot concur in the view that it "requires the minority to abandon their honest opinions for those of the majority" or that "its effect is to misguide the jury as to their individual duty."

In *State* v. *Smith, supra,* the court had been requested by the accused to charge that "each juror in this case must be governed by his own judgment, founded upon the law and the evidence, and must not be governed, controlled or influenced by the judgment or opinion of others in agreeing to a verdict." We said that that request was unsound in law and then added the statements above quoted and cited the decision in *Commonwealth* v. *Tuey,* 62 Mass. (8 Cush.) 1, where the Supreme Court of Massachusetts sanctioned a similar doctrine. In *State* v. *Mosca,* 90 Conn. 381, 97 Atl. 340, the same claim was urged as is now put forward in this case, that the prompt return of the jury after receiving the above charge, showed that it was equivalent to an order to agree. The claim was held to be unsound. We have in effect said and now repeat, that it is a charge which has many times been given by our trial courts and approved by this court as a proper instruction where a jury has failed to agree within a reasonable time upon a verdict.

Under another assignment it appears that the court told the jury that proof of feeble-mindedness was sufficient to sustain the information, and with this the defense takes issue. Under our present criminal pro-

cedure, the offense with which the accused is charged may be set out either by using the name of the offense at common law or statute, or by defining it in the terms of the common law or of the statute, or by terms of substantially the same meaning. This information meets these requirements. Practice Book, Insert, at page 302. The accusation is carnal abuse of a feeble-minded person, and obviously to avoid the necessity of a bill of particulars, certain particulars of the offense are charged, one of them being that this woman was an imbecile.

The accused now contends that under this information, the accusation being carnal abuse of a feeble-minded person, particularized as carnal knowledge of this woman "who was at said time an imbecile," the State is required to prove the particular allegation, and that it was error for the court to charge that proof that the woman was either feeble-minded or an imbecile was sufficient to sustain a conviction. It does not appear from the record that he made this claim to the trial court; it is not, therefore, properly before us and we do not discuss it. Under all the circumstances, we hold that the information sufficiently apprised the accused of the charge against him to enable him to properly prepare his defense.

It is further assigned as error that the trial court incorrectly defined the terms "feeble-mindedness" and "imbecility." For the reasons we have indicated, we need not enter into a discussion of the technical distinctions made by medical authorities and urged by the defendant; the jury could not well have been misled to the prejudice of the accused by any infirmity of distinction made by the court between the two mental cases. For the purposes of this particular case, the charge in this respect was not inadequate for the protection of the accused.

The remaining assignment, that the trial court erred in its illustration of the term "feeble-mindedness," is without merit. It was a fair statement calculated to enable the jury to apply the law to the facts of the case. *Deutsch* v. *LaBonne,* 111 Conn. 41, 44, 149 Atl. 244; *Crane* v. *Hartford-Connecticut Trust Co.,* 111 Conn. 313, 149 Atl. 782; *Schiesel* v. *Poli Realty Co.,* 108 Conn. 115, 124, 142 Atl. 812; *Albonsky* v. *Banaitis,* 106 Conn. 205, 206, 137 Atl. 740.

The motion to set aside the verdict was properly denied.

There is no error.

In this opinion the other judges concurred.