STATE OF CONNECTICUT *v.* ROBERT BRADLEY

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued June 17—decided July 16, 1947

*Charles Henchel,* special public defender, and *Elliott R. Katz,* assistant special public defender, for the appellant (defendant).

*Abraham S. Ullman,* state's attorney, with whom was *Arthur T. Gorman,* assistant state's attorney, for the appellee (state).

DICKENSON, J. The defendant was charged in separate counts with the first degree murder of

three persons. The jury found him guilty of second degree murder on the first count and of first degree murder on the second and third counts. He has appealed, assigning error in the denial of a motion for separate trials on each count, in the denial of a motion to set aside the verdicts, in numerous rulings on matters of procedure and on evidence, and in the charge.

The substance of the defendant's claim that the verdicts should have been set aside is that they were necessarily based upon the testimony of William Lisenby, who, while he purported to be an accomplice of the defendant in two of the homicides, the defendant claims was in fact the perpetrator of all of them, and that Lisenby's testimony was so patently contradictory and unworthy of belief that the jury were not justified in accepting it. While a study of the evidence shows the depravity of Lisenby, it discloses no inconsistencies or contradictions in his testimony as to matters essential to establish the guilt of the defendant. Lisenby's testimony was corroborated in many respects by the evidence of other witnesses. Moreover, it was for the jury to pass upon his credibility and in so doing they could believe his story in substance while not accepting it in its entirety. *State* v. *Cots,* 126 Conn. 48, 56, 9 A. 2d 138; *Leitzes* v. *F. L. Caulkins Auto Co.,* 123 Conn. 459, 461, 196 A. 145; *State* v. *Wolcott,* 21 Conn. 272, 282.

From Lisenby's testimony, the other evidence and justifiable inferences therefrom, the jury could have found the following facts: In the summer of 1946 motor cars were in great demand and brought high prices. The defendant conceived the plan of obtaining a car from an acquaintance, Henry Edwards, by killing him, disposing of his body and

selling his car in New York City, representing himself to be Edwards. On July 11, 1946, he lured Edwards to a lonely, wooded section outside of New Haven on the pretense of an appointment with white women (both men were Negroes), killed him by striking him with the handle of a shovel, stripped his body of clothing and left it there, throwing his clothing and the shovel into a swamp. At daybreak the following day he drove the Edwards car to New York, sold it, representing himself to be Edwards, removed the license plates and returned to New Haven. He gave his wife part of the money he had received and she deposited it in the bank a few days later. This was the homicide charged in the first count.

Edwards had told Lisenby of a proposed appointment with the defendant, and when Edwards disappeared Lisenby spoke to the defendant about it. Fearing Lisenby's knowledge, the defendant decided to include him in further crimes of like purpose and character. About the first of August the defendant spoke to Lisenby about a car owned by Oscar Matheny, another Negro, and some two weeks later discussed with Lisenby a scheme to get possession of this car similar to that by which he had obtained the Edwards car. Lisenby agreed to join him in the scheme. They cultivated their acquaintance with Matheny, the defendant suggested a picnic with three white girls and Matheny fell in with the suggestion. On August 18, the defendant, Lisenby and Matheny drove in Matheny's car to a wooded section of East Haven some distance from the location of the Edwards homicide. While Lisenby purported to wait for the women the defendant led Matheny further into the woods, ostensibly to dig a pit in which to roast frankfurters for the picnic.

While Matheny was digging, the defendant struck him on the head with an ax. He then called to Lisenby, who found the defendant stripping Matheny of his clothing while he lay prone and bleeding. Matheny was groaning and the defendant struck him twice again, remarking that Edwards, too, had died hard, that the defendant had had to strike him twice with the handle of a spade. The two men buried Matheny's body in the pit he had helped dig. The ax, shovel and clothing were wrapped in canvas in which the tools had been carried. Lisenby drove to the Quinnipiac River in North Haven at the defendant's direction and the bundle of tools and clothing was thrown into the river not far from the place where the defendant had earlier disposed of Edwards' clothing. At daybreak the next day the two men drove the Matheny car to New York, sold it and divided the proceeds. On September 8, 1946, in a manner so identical with the conduct of the other homicides that it is not necessary to repeat the gruesome details, a third victim, Benjamin Carter, was slain, his body stripped of clothing and buried, his car taken to New York and sold and the proceeds divided between the defendant and Lisenby.

Edwards' body, which had not been buried, was discovered on September 10. The defendant was arrested on a charge of stealing lumber near where the body lay. Investigation revealed the sale by the defendant of the three cars. Lisenby was arrested and ultimately told the police of the homicides. The bodies were located and the clothing and tools recovered. The defendant on trial admitted the sale of the cars, although at the time of his arrest he had denied to the police the selling of the Matheny and Carter cars. He claimed that the sales were by agreement with the owners, to whom he had re-

turned the proceeds less his commission. A considerable sum of money was deposited by the defendant's wife in her bank account following the disappearance of each of the victims. The ax used in the Carter murder was similar to one sold to the defendant when accompanied by Lisenby. Canvas like that used in the Matheny murder and a jacket worn by Carter at the time of his murder were found at the defendant's home.

The defendant points to the fact that he was found guilty of murder in the second degree as to the Edwards homicide while he was found guilty of murder in the first degree in the Matheny and Carter homicides although the three crimes were similar in incident, and he claims this to be an inconsistency showing improper motives on the part of the jury. As the state well claims, the fact that the proof that the defendant killed Edwards was wholly circumstantial might reasonably account for the difference in the verdicts. The defendant further contends that the identification of Edwards' body lacked necessary elements of proof. The body had not been buried and a doctor who examined it stated that it was mostly a skeleton with some flesh attached. The identification was that of Edwards' wife, who testified that the teeth were those of her husband. She was neither examined nor cross-examined in detail as to her means of recognition of these. The jury were entitled to accept the identification as positive, taken with the other evidence of Edwards' death such as Mrs. Edwards' identification of her husband's clothing, recovered by the police.

In *State* v. *Chin Lung,* 106 Conn. 701, 704, 139 A. 91, we said: "Under the rule prevailing in this jurisdiction, we examine and test the evidence in the same way the jury should have done in reaching its

verdict. If we find it to be one which twelve honest men, acting fairly, intelligently and reasonably, might have rendered, we cannot set it aside. If, on the other hand, we find it does manifest injustice, and is so palpably against the evidence as to indicate that the jury must have made some mistake in the application of legal principles, or were influenced by lack of knowledge or understanding or by corruption, prejudice, or partiality, we will set it aside." We added that "Great weight must be given to the ruling of the trial court, and all reasonable presumptions resolved in its support." And see *State* v. *Manganella,* 113 Conn. 209, 222, 155 A. 74; *State* v. *Hayes,* 127 Conn. 543, 553, 18 A. 2d 895. The jury might reasonably have reached the conclusion that the defendant was guilty on all three counts. The trial court was not in error in refusing to set aside the verdicts.

The defendant claims that, as he was charged with having committed three separate and unrelated murders on widely separated dates, he was entitled to separate trials on each count and that his trial on all three together was prejudicial to his right to an impartial trial. General Statutes, § 6451, provides that, "Whenever two or more cases shall be pending at the same time against the same party, in the same court, for offenses of the same character, counts for such offenses may be joined in one information unless the court shall order otherwise." In *State* v. *Kemp,* 126 Conn. 60, 84, 9 A. 2d 63, we stated that in view of the statute such a joinder in one indictment or information cannot be regarded as so prejudicial in itself as to make a trial improper. While the statute refers specifically to informations, the same principle applies as regards counts in an indictment for murder. The matter lies within

the discretion of the trial court and the exercise of that discretion cannot be interfered with unless it has been manifestly abused. See *Lemon* v. *United States,* 164 F. 953, 958, 90 C. C. A. 617; 1 Wharton, Criminal Procedure (10th Ed.) § 335; 23 C. J. S. 209, 210. *McElroy* v. *United States,* 164 U. S. 76, 80, 17 S. Ct. 31, 41 L. Ed. 355, upon which the defendant relies, gives little support for his contention. It relates to a federal statute which provides for a consolidation of counts where the offenses are of the same class or are connected. In that case the crimes charged were not of the same class or connected. In the case before us the indictment charged three separate and distinct murders but they showed a common design. They were properly tried together. See *Grasso* v. *Frattolillo,* 111 Conn. 209, 212, 149 A. 838.

The defendant has assigned error in relation to a statement made during the trial by the state's attorney as to certain facts that he claimed had been testified to. The defendant objected to the statement as incorrect and asked that the court instruct the jury that it be disregarded. The court said that the jury "will be instructed and understand the only thing they are to be guided by is the evidence and not by the argument of counsel." An examination of the record shows that the state's attorney's statement was correct. The statement of the trial court was too favorable to the defendant and there was no reason for the court to refer to the matter in the charge.

The defendant claims error in that, while he "requested the court to charge that the jury could disregard the evidence of a witness if they found he had not told the truth or had lied," the court in giving this charge added the words "in court," thus restrict-

ing the application of the so-called rule of falsus in uno, falsus in omnibus, to testimony given in court, whereas there was evidence of false statements made by the witness Lisenby before the coroner. The trial court, however, went on to charge that, if the jury found that a witness had given "conflicting testimony under oath," that fact should be given great consideration. This language was broad enough to include false testimony before the coroner.

The jury retired to deliberate at about 10:30 a.m. on January 29, 1947. At 10:14 p.m. of the same day, in response to their communication, the court called them in. It appears from the record that they had not then agreed and that the court informed counsel that it proposed to read to them our decision in *State* v. *Smith*, 49 Conn. 376, 386, relating to the duty of a jury to attempt to agree. The court then stated to the jury that they had been "deliberating so long and honestly" that it felt justified in sending for them to read what this court had said concerning their duties where there was an apparent disagreement, and it read from *State* v. *Smith*, supra, as follows: "Although the verdict to which each juror agrees must, of course, be his own conclusion and not a mere acquiescence in the conclusions of his fellows, yet, in order to bring twelve minds to an unanimous result, the jurors should examine with candor the questions submitted to them and with due regard and deference to the opinions of each other. In conferring together the jury ought to pay proper respect to each other's opinions, and listen with candor to each other's arguments. If much the larger number of the panel are for a conviction, the dissenting juror should consider whether the doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men equally

honest, equally intelligent with himself, who have heard the same evidence, with the same attention and with equal desire to arrive at the truth and under the sanction of the same oath. And on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the conclusions of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

Not having arrived at a verdict that evening, the jury were excused until the following day, when they returned a verdict on the first count and reported that they were unable to agree on a verdict on the second and third counts. The court accepted the verdict on the first count, referred to the instruction it had earlier given as to the duty of the jury to attempt to agree and returned them for further consideration of their verdicts on the second and third counts. The defendant contends that the reading from and later reference to *State* v. *Smith,* supra, was an invasion by the court of the province of the jury. Necessarily, the authorities he cites come from without the state, for the use of the instruction approved in that case in the year 1881 has been consistently upheld by us since that time. *State* v. *Mosca,* 90 Conn. 381, 385, 97 A. 340; *State* v. *Schleifer,* 102 Conn. 708, 725, 130 A. 184; *State* v. *Wyman,* 118 Conn. 501, 507, 173 A. 155; *State* v. *Monte,* 131 Conn. 134, 136, 38 A. 2d 434.

About an hour after the last time the court had referred to the doctrine of *State* v. *Smith,* supra, the jury returned and the foreman stated that they were trying to agree and that an answer to a ques-

tion might help them. The question was whether, if a person had prior knowledge of a murder which he helped to plan and from which he benefited, he would be equally guilty with the actual perpetrator. The court stated that the categorical answer was "Yes." About ten minutes later the jury brought in their verdicts on the second and third counts. From the question asked and other interchanges between the court and the foreman of the jury appearing in the record, it is quite evident that one or more of the jurors were not satisfied that the defendant actually perpetrated the crime but felt that it was established that he had joined in planning it and reaped a benefit from it. The defendant does not question that the answer the court gave to the question was correct. The error claimed is that thereby the court submitted to the jury an issue foreign to the facts which the jury might find from the evidence. There was ample evidence to support a conclusion that the defendant joined with Lisenby in planning the murders; and the answer of the court, read with the charge, would justify a juror in concluding that, if the defendant did not actually do the killing, he was guilty as an accessory. General Statutes § 6562. That this was not the theory on which the state claimed a conviction does not invalidate a verdict so reached. In considering whether the charge of the court as to the duty of a jury to strive to agree was erroneous under the circumstances of the case, this fact becomes very material. The record makes it evident that the final agreement of the jury was not reached because of submission to any improper urging of the court, but upon the basis of the answer given by it to the inquiry. We cannot on this record find that the instructions of the trial court based upon *State* v. *Smith*, supra, con-

stituted reversible error because they coerced the jury or any member of it or unduly urged upon them the desirability of an agreement.

The defendant claims that the court upon accepting the verdict on the first count could not return the jury for further consideration of the second and third counts but should have discharged them as to these counts, and that if it intended to return the jury for further consideration of these counts it should have returned them for consideration of all three counts. In *State* v. *Tuller,* 34 Conn. 280, 299, we said, "In England if two different felonies are charged in separate counts, the court will quash the indictment, but that is not the practice here." We thus early recognized the right and expediency of trying separate crimes at one and the same time. This, however, does not change their character as separate crimes and it is our practice to require separate verdicts on each count. *State* v. *Miglin,* 101 Conn. 8, 11, 125 A. 250; *State* v. *Fasano,* 119 Conn. 455, 463, 177 A. 376; *State* v. *Kemp,* supra, 85. The verdict of guilty on one count left the others undecided. The court, after accepting the verdict on the first count, might have declared a mistrial as to the others and discharged the jury. This would, however, have left these counts pending and have required a new trial. The court could not refuse to accept the verdict on the first count and send the jury back for reconsideration of it unless it judged that they had mistaken the evidence, or that the verdict was contrary to it or was contrary to the law as charged by the court. General Statutes § 5657. The court's action in accepting the verdict indicated that it had come to no such conclusion. It was not error to send the jury back for further consideration of the other two counts. *State* v. *Cianflone,* 98

Conn. 454, 462, 120 A. 347; see *State* v. *Searles,* 113
Conn. 247, 253, 155 A. 213.

The defendant was presented for sentence, and
the state moved for sentence on each count of the
indictment, whereupon the court sentenced the de-
fendant to the death penalty "on each of the con-
victions returned by the jury." After a conference
between the state's attorney and the court, it caused
the defendant to be presented again, stating that it
had understood the state to have moved for sentence
on the counts in which the jury had returned a ver-
dict of murder in the first degree. The court then
sentenced the defendant to imprisonment for life on
the first count of the indictment. The contention of
the defendant is that the court should have revoked
the sentence of death on the first count before im-
posing that of imprisonment for life on that count.
The short answer is that there was no sentence to
revoke, since under the circumstances the sentence
first pronounced must be construed as being upon
the death counts alone. In any event the court's
subsequent act in imposing a life sentence consti-
tuted an implied revocation and cleared the record.

The defendant's assignment of error because of
the brevity of the charge is without merit. He
points to no omission of an essential element and
we find none.

The defendant was presented for sentence imme-
diately upon conclusion of the trial. The defend-
ant's counsel voiced no objection to the imposition
of sentence at that time and the court pronounced
it. The defendant filed a motion to set aside the
verdicts within twenty-four hours of their rendition.
Practice Book § 229. His contention is that sentence
should have been deferred until he had filed his mo-
tion and it had been passed upon. The record re-

cites that the motion was denied. Had the defendant given any indication of an intention to file the motion, the court no doubt would have deferred sentence. The court still had control of its judgments when the motion was filed. *State* v. *Pallotti,* 119 Conn. 70, 74, 174 A. 74. It heard the motion and denied it. Had it decided that the motion should have been granted, it could and no doubt would have opened the judgments and granted it. We see no way in which the defendant was harmed by the procedure.

Numerous rulings on evidence were assigned as error. In two, no answer to a question admitted over objection appears. These rulings cannot, therefore, be made a ground of error. *Jenkins* v. *Reichert,* 125 Conn. 258, 264, 5 A. 2d 6. Another question by the state's attorney on cross-examination was objected to as a statement. It was, on the contrary, a question attempting to elicit from the witness an explanation of an ambiguous answer. The cross-examination of a witness for the defendant was objected to as irrelevant to any testimony elicited on direct. The witness had testified on direct that she was ill. The cross-examination attempted to show that she had made bank deposits during the period of her claimed incapacity. It was apparently relevant, and its admission was at least fairly within the discretion of the trial court as to the scope of cross-examination. See *Bishop* v. *Copp,* 96 Conn. 571, 574, 114 A. 682. A question excluded on objection attempted to characterize the testimony of another witness as false. The question was improper. *State* v. *Schleifer,* supra, 724.

The following questions were excluded on cross-examination of a witness who testified for the state: "Did you ever graduate from a dental college?"

"Were you ever arrested and prosecuted for violation of the statutes . . . for the practice of dentistry?" "Do you operate a dental laboratory?" The witness had already testified that he did all the work of a dentist and held a state license. The questions were claimed on credibility and to show the occupation of the witness. They were excluded as immaterial. The purpose for which the witness was offered by the state does not appear. The excerpt of his testimony included in the finding does not show that the trial court abused its discretion as to the scope of cross-examination in excluding these apparently unimportant questions. *Spiro* v. *Nitkin,* 72 Conn. 202, 205, 44 A. 13.

The remaining rulings are claimed to be erroneous on the ground that the defendant's right to cross-examine Lisenby was unduly restricted. On a question of this kind, it is the rule that the evidence may be examined to supplement the finding. *Stabile* v. *D. & N. Transportation Co.,* 129 Conn. 11, 13, 26 A. 2d 12; Conn. App. Proc., p. 102. Lisenby's cross-examination covers over 200 pages of the printed record and extended over a period of nearly three days; comparatively few objections were made by the state. The cross-examination was not limited. On the contrary, the defendant was wisely given great latitude. No specific ruling is of sufficient importance to alter this conclusion. See *State* v. *Hayes,* supra, 603.

There is no error.

In this opinion the other judges concurred.