MARY C. O'BRIEN *v.* M. J. NEIDITZ

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 249

Argued June 18—decided October 15, 1976

*Robert B. Halloran,* for the appellant (plaintiff).

*Mark H. Swerdloff,* with whom, on the brief, was *John F. Droney,* for the appellee (defendant).

SPEZIALE, J. This action for damages arises out of an accident in a shopping center which was owned and operated by the defendant. The plaintiff claimed that the negligence of the defendant caused her to trip and fall on an entrance ramp to a store and that she thereby sustained injuries. The defendant filed a special defense alleging contributory negligence on the part of the plaintiff. After a trial by jury, there was a general verdict for the defendant and judgment was rendered for the defendant, from which the plaintiff has appealed. The plaintiff's principal contention is that the court erred in giving the jury the "Chip Smith" charge[1] twice

---

[1] The words of *State* v. *Smith,* 49 Conn. 376, 386, are: "Although the verdict to which each juror agrees must, of course, be his own conclusion and not a mere acquiescence in the conclusions of his fellows, yet in order to bring twelve minds to a unanimous result, the jurors should examine with candor the questions submitted to them and with due regard and deference to the opinions of each other. In conferring together the jury ought to pay proper respect to each other's opinions, and listen with candor to each other's arguments. If much the larger number of the panel are for a conviction, a dissenting juror should consider whether the doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men equally honest, equally intelligent with himself, who have heard the same evidence, with the same attention, and with equal desire to arrive at the truth, and under the sanction of the same oath. And on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the conclusions of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

within the first two hours and fifteen minutes of jury deliberation.

A review of the chronology of events on the day of deliberation is important to an evaluation of the plaintiff's claims. The court completed its basic charge to the jury at about 1:30 p.m., and at 2:30 p.m., after the luncheon recess, the jury began their deliberations. At 3:35 p.m. the court responded to a question from the jury by giving supplemental instructions on negligence and contributory negligence. The plaintiff objected to the supplemental charge on the ground that it was slanted in favor of the defendant. At 3:55 p.m. the jury submitted to the court a note which read: "The issue this jury cannot agree on is that of unreasonable negligence on the part of the defendant." At that point, the court read to the jury a modified version of the "Chip Smith" charge.[2] The court then added the following: "Well, what I am telling you in essence is, I want you to reach a decision in this case. You have heard all of the evidence. The parties are here today. They want you to reach a decision. The

[2] The court instructed the jury as follows: "Although the verdict to which each juror [agrees], and in this case referring to this particular issue, must be his own conclusion and not a mere acquiescence in the conclusions of his fellows, yet, in order to bring six minds to a unanimous result, the jurors should examine, with candor, the questions submitted to them and in due regard, in deference to the opinion of each other. In conferring together, the jury ought to pay proper respect to each other's opinions, and listen with candor to each other's arguments. If much the larger number of the panel are for reaching a certain conclusion, a dissenting juror should consider whether the doubt in his mind is a reasonable one which makes no impression upon the minds of so many others, equally honest, equally intelligent with himself, and who have heard the same evidence with the same attention, and with equal desire to arrive at the truth under the sanction of the same oath. On the other hand, if the majority are for one conclusion, the minority ought to seriously ask themselves whether they may not reasonably and ought not to doubt the conclusions of a judgment which is not concurred in by most of those with whom they are associated, and distrust the light or sufficiency of that evidence which fails to carry conviction in the minds of their fellows."

plaintiff wants you to reach a decision for her, and the defendant wants you to reach a decision for him. I want you to reach a decision. You have the verdict forms. I want you to go back and consider in your deliberations some of the things I have mentioned, which comes from an old established charge that has been used, not just in Connecticut but throughout the United States. So, with that in mind I will send you back into the deliberation chambers."

At that time the plaintiff did not object to the additional remarks made by the court, but the plaintiff did ask the court to redefine negligence for the jury and did object to the use of the "Chip Smith" charge at that point in the proceedings. After hearing argument of counsel, the court decided to redefine negligence for the jury with an additional charge. The jury were brought back into the courtroom at 4:12 p.m. for that supplemental instruction. The defendant took an exception to that supplemental charge. The plaintiff, however, made no objection. At 4:35 p.m. the court received a note from the jury that they were deadlocked. The defendant requested that the court give the "Chip Smith" charge again and the plaintiff concurred in that request. Neither the plaintiff nor the defendant objected to the second reading of the "Chip Smith" charge. At 4:58 p.m. the jury returned a defendant's verdict.

The plaintiff contends that the two "Chip Smith" charges and the additional remarks by the court amounted to an invasion of the province of the jury and were coercive. The plaintiff agreed to the second reading of the "Chip Smith" charge after the jury reported a deadlock. The plaintiff did not then object and she cannot now complain that she was harmed by such an instruction.

A review of the basic charge as a whole and of all the supplemental charges is necessary to determine

whether the initial use of the "Chip Smith" charge and the additional remarks of the court had a coercive effect on the jury. *Hanken* v. *Buckley Bros., Inc.,* 159 Conn. 438, 442; Maltbie, Conn. App. Proc. § 92. "The ultimate test of a court's charge is whether it fairly presents the case to a jury in such a way that injustice is not done to either party under the established rules of law." *Szlinsky* v. *Denhup,* 156 Conn. 159, 163. A supplemental charge to encourage a verdict, especially in the light of an apparent deadlock, has been approved in a long line of cases, starting with *State* v. *Smith,* 49 Conn. 376, 386. *Tough* v. *Ives,* 162 Conn. 274, 278; *Szlinsky* v. *Denhup,* supra, 162; *State* v. *Walters,* 145 Conn. 60, 63–64; *State* v. *Bradley,* 134 Conn. 102, 112; *State* v. *Schleifer,* 102 Conn. 708, 725. The court did not err in using the "Chip Smith" charge at an early point in the jury's deliberations before the report of a deadlock, even if that instruction was not in conformance with the usual practice. See *State* v. *Schleifer,* supra, 725. *State* v. *Smith,* supra, defines the duties of the jury. The charge in question is a statement of correct doctrine no matter when it is recited. *State* v. *Walters,* supra, 64; *State* v. *Schleifer,* supra. "Better than any other statement which has come to our attention it makes clear the necessity, on the one hand, of unanimity among the jurors in any verdict, and on the other hand the duty of careful consideration by each juror of the views and opinions of each of his fellow jurors, something without which no intelligent body of twelve would be likely to reach a unanimous result in any case where there was any substantial factual dispute. *Allen* v. *United States,* [164 U.S. 492, 501]. For practical reasons only, its use has customarily been deferred until after a disagreement has been reported." *State* v. *Walters,* supra. It was not an abuse of discretion for the trial court to give the "Chip Smith" charge before the jury had reported

a deadlock. Moreover, the charge had no obvious coercive effect in the present case because the jury returned some forty minutes later to report a deadlock rather than a verdict.

The court gave the jury the first "Chip Smith" charge in response to a note from the jury indicating that they could not agree on the issue of unreasonable negligence on the part of the defendant. It is apparent from the jury's note that they were confused about the legal standard which they were to apply to the facts in the case. Had the court gone no further than the "Chip Smith" charge, there would have been a serious question of whether the court had fulfilled its duty "to give full and adequate instructions to meet all phases of the situation which the question presented." *Annes* v. *Connecticut Co.,* 107 Conn. 126, 131–32; *Bottaro* v. *Schoenborn,* 157 Conn. 194, 197; *Intelisano* v. *Greenwell,* 155 Conn. 436, 448. Immediately after giving the "Chip Smith" charge, however, the court recalled the jury to instruct them further on the definition of negligence. Those additional instructions adequately protected the plaintiff's interest. See *DePaola* v. *Seamour,* 163 Conn. 246, 253.

The plaintiff also contends that the court's additional remarks made after the first "Chip Smith" charge were coercive. The plaintiff argues that the power and prestige of the court was placed behind a speedy resolution of the case when the court said "I want you to reach a decision in this case. . . . The parties are here today." Those words alone suggest that the judge invaded the province of the jury by ordering them to make a decision. "We are not unmindful that a judge occupies a role of inherent power and dignity that commands a deference from the jury impossible to appraise precisely and that '[w]hat he tells the jury . . . has great weight with them.' *LaChase* v. *Sanders,* 142 Conn. 122,

124 . . . . The charge to the jury, however, must be read as a whole, and an attempt to assert reversible error by culling a single phrase or inaccurate statement must fail unless it is reasonably probable that the jury were misled. *State* v. *Tropiano,* 158 Conn. 412, 433 . . . , cert. denied, 398 U.S. 949 . . . ; *Penna* v. *Esposito,* 154 Conn. 212, 215 . . . ; *Allard* v. *Hartford,* 151 Conn. 284, 292 . . . ." *State* v. *Ralls,* 167 Conn. 408, 422.

In the present case, the judge's remarks to the jury appear to have been made to explain the import of the previously read "Chip Smith" charge in layman's terms. The judge went on to tell the jury "I want you to go back and consider in your deliberations some of the things I have mentioned, which comes from an old established charge . . . ." That was another attempt to explain the "Chip Smith" charge. Therefore, even if the statements in question were too direct, we do not think that those statements, in the context of the whole charge and the other instructions, deprived the plaintiff of her right to a unanimous verdict unhampered by coercive circumstances.

Finally, the plaintiff claims error in the court's refusal to charge as she requested on notice, giving instead a notice charge which was prejudicial to her. In this case the defendant had both denied allegations of his negligence and alleged that the plaintiff herself was contributorily negligent. The defendant conceivably could have prevailed on either defense. *Hardy* v. *Weitzman,* 147 Conn. 727, 728. A charge on notice went to the merits of the plaintiff's complaint only, and not to the defendant's allegation of contributory negligence by the plaintiff. Any error in such a charge would be harmless because the verdict returned for the defendant was general in nature. A general verdict imports "that the issues of fact on both defenses were resolved in

favor of the defendant. When there are two distinct defenses upon which the parties are at issue, a general verdict will stand if it can be supported on the basis of one of them, regardless of error in the charge pertaining to the other." *Gennallo* v. *Mazzacane*, 144 Conn. 686, 689.

There is no error.

In this opinion PARSKEY and SPONZO, JS., concurred.